UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CASE NO. 99-CV-81073
HONORABLE GEORGE CARAM STEEH

ALI ABOU-KHODR,

    Defendant.
_____/

**OPINION AND ORDER GRANTING
PETITIONER'S MOTION FOR A WRIT OF ERROR CORAM NOBIS**

Now before the court is petitioner Ali Abou-Khodr's renewed motion to vacate his sentence pursuant to 28 U.S.C. § 2255, or in the alternative, a petition for a writ of error *coram nobis* pursuant to 28 U.S.C. § 1651. Based on the extraordinary circumstances presented here, where Abou-Khodr has shown that his attorney falsely promised him that if he pleaded guilty and cooperated with the government he would not be deported, and where it would have been objectively reasonable for him to have insisted on going to trial had he known otherwise, Abou-Khodr has shown ineffective assistance of counsel, and his petition for a writ or error *coram nobis* shall be granted.

BACKGROUND

Abou-Khodr is a native and citizen of Lebanon legally admitted to the United States on September 29, 1996. He is married with six children, all of whom are citizens of the United States, and he is the part-owner of a family business in this country. On January 14, 2002, after his defense counsel promised him that he would not be deported if he pled

guilty and cooperated with the government in its investigation of a heroin smuggling conspiracy, Abou-Khodr pleaded guilty to conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846. In support of his petition, Abou-Khodr relies on his affidavit wherein he states that he pled guilty based on his attorney Sanford Plotkin's false promises that he would be allowed to remain in the country if he did so. (Doc. 422, Ex. D at ¶ 6). He also relies on Plotkin's affidavit, submitted in support of his petition, which states that Plotkin counseled Abou-Khodr to plead guilty based on his understanding, arising from numerous discussions with the government, that Abou-Khodr would be allowed to stay in the United States. (Doc. 422, Ex. C at § 5).

On August 22, 2013, the court conducted a status conference with counsel for the parties, including Assistant United States Attorney ("AUSA") and Criminal Chief Daniel Lemisch, and Arthur Weiss for Abou-Khodr. At that conference, the parties agreed that there exists no factual dispute requiring an evidentiary hearing to resolve Abou-Khodr' petition. The government indicated its agreement that the affidavits submitted by Abou-Khodr and his defense counsel are accurate.

At the plea hearing, AUSA Joe Allen stated that depending on Abou-Khodr's cooperation, the government would recommend an asylum type program, if appropriate, designed to keep Abou-Khodr in the country, even though he might otherwise be subject to removal. (Doc 412 at 17). While this court is convinced that the government's promises to assist Abou-Khodr to remain in the United States were made in good faith and without any intention to mislead, there were many alternative ways discussed between counsel in chambers conferences that the government would utilize if possible, to keep Abou-Khodr in this country. Among those alternatives were support for an asylum petition, issuance of

a material witness warrant, and support for an "S" visa.  Such assurances undoubtedly contributed to induce detrimental reliance by Abou-Khodr in proceeding with his plea.  As explained by AUSA Lemisch at the August 22, 2013 status conference, there was never a real possibility that an "S" visa for Abou-Khodr could have been obtained.

In support of his petition, Abou-Khodr submitted an affidavit stating "[t]hat remaining in this country with his family was his ... paramount concern.  He ... would have risked everything to remain in this country, including going to trial, if he had been aware there was even [a] one-percent (1%) chance of him ... being deported due to a conviction in this prosecution."  (Doc. 422, Ex. D at ¶ 9).  Despite the government's promises of a very favorable sentence recommendation and its promises to do everything possible to allow him to remain in the United States because of his substantial assistance in the government's investigation, Abou-Khodr made an oral motion to withdraw his plea on May 4, 2004, the date set for sentencing, apparently based on his confusion as to the criminal nature of his alleged participation in the conspiracy.  (Doc. 415 at 3-4).  In support of his motion to withdraw his plea, Plotkin, informed the court that Abou-Khodr "was given guidance that led him in a way that was perhaps not true and accurate that led to a guilty plea" that was "[n]ot in his best interest."  Id. at 4.  This court denied his motion to withdraw his plea.  Id.  At that same proceeding, Plotkin moved to withdraw as counsel.  Id. at 5.

At the sentencing hearing held on May 24, 2004, Abou-Khodr indicated that he was satisfied with his counsel and Plotkin withdrew his motion to withdraw.  (Doc. 417 at 1-2). Based on his substantial assistance in the government's investigation, the government moved for a § 5K1.1 reduction in his sentence.  Id. at 3.  The court granted the government's motion and sentenced Abou-Khodr to six months imprisonment followed by

two years supervised release. Abou-Khodr completed his prison sentence on August 1, 2005.

While Abou-Khodr was incarcerated in Pennsylvania, the government began removal proceedings. On February 15, 2005, after he was released from custody, Immigration and Customs Enforcement ("ICE") in Pennsylvania charged him as removable for being convicted of an aggravated felon and an alien convicted of a controlled substance crime. 8 U.S.C. § 1227(a)(2)(A)(iii) and (B)(I). For unknown reasons, the Department of Homeland Security administratively closed Abou-Khodr's case and federal Marshals returned him to Michigan and released him. Four years later, in December, 2009, Detroit ICE agents apprehended Abou-Khodr and reinstated removal proceedings. The immigration judge detained him without a bond hearing. Abou-Khodr filed a habeas petition, pursuant to 28 U.S.C. § 2241, which Judge Stephen J. Murphy, III, of this district, granted and ordered a bond hearing. The immigration judge then released him upon the posting of a $50,000 bond.

On July 30, 2010, Abou-Khodr filed a § 2255 motion to vacate his sentence, or in the alternative, a petition for a writ of error *coram nobis*, on the grounds that his attorney falsely guaranteed him that he would remain in this country if he pled guilty, thus amounting to ineffective assistance of counsel. The government opposed the petition on the grounds that the habeas petition was time-barred and Abou-Khodr was no longer "in custody;" thus, he lacked standing to bring a habeas petition. On May 18, 2011, Abou-Khodr dismissed without prejudice his motion to vacate pursuant to § 2255, or his petition for a writ of error *coram nobis*, pending the Sixth Circuit's opinion on the appeal of the decision of the immigration judge and the Board of Immigration Appeals ("BIA").

In his initial motion to vacate, Abou-Khodr relied on Padilla v. Kentucky, 130 S. Ct. 1473, 1486 (2010) which held that an attorney provides ineffective assistance where she fails to inform her client that his plea carries a risk of deportation. In Chaidez v. United States, 133 S. Ct. 1103, 1106-1113 (2013), the Supreme Court held that Padilla is not retroactive. Abou-Khodr argues that Chaidez does not preclude his renewed petition because he does not rely on a mere absence of advice that he could be deported, but misfeasance based on an actual promise that he would not be deported. See Chaidez, 133 S. Ct. at 1111, n.12 (recognizing that three federal courts of appeals allow ineffective assistance of counsel claims where defense counsel affirmatively misled their clients about the consequences of deportation). On August 8, 2013, the Sixth Circuit issued its decision, upholding the decisions of an immigration judge and the BIA, and denying Ali Abou-Khodr's petition to avoid removal to Lebanon. On that same date, Abou-Khodr filed a renewed motion to vacate his sentence under § 2255, or in the alternative, he seeks relief as a writ of error *coram nobis*.

## ANALYSIS

I.  HABEAS PETITION UNDER 28 U.S.C. § 2255

A.  "In Custody"

In order to bring a habeas claim under § 2255, a petitioner must be "in custody." Section 2255 expressly provides that a petition under that section may be filed by "[a] prisoner *in custody* under sentence of a court established by Act of Congress[.]" 28 U.S.C. § 2255(a) (emphasis added). See Maleng v. Cook, 490 U.S. 488, 490-91 (1989). The Sixth Circuit has held that a defendant who has served his sentence and has been removed from the United States is no longer "in custody" and cannot proceed under § 2255, but must

proceed under the writ of *coram nobis*. Pilla v. United States, 668 F.3d 368, 372 (6th Cir. 2012).[1] Because Abou-Khodr has completed his sentence and supervised release, he is no longer "in custody" within the meaning of § 2255. For the reasons discussed below, however, he can proceed to seek relief under the All Writs Act pursuant to 28 U.S.C. § 1651(a).

B.  Statute of Limitations

Because Abou-Khodr is no longer "in custody" and thus, cannot proceed under § 2255, there is no need to address the issue of whether his § 2255 petition is time-barred. The government, however, argues that Abou-Khodr's petition for a writ of error *coram nobis*, for which there is no statute of limitations, should be denied under the doctrine of laches, for the same reasons that the government argues that his § 2255 petition is time-barred. In support of its laches argument, the government relies on Kerman v. United States, 200 Fed. App'x 578, 580-81 (6th Cir. 2006), cert. denied, 550 U.S. 976 (2007), where the Sixth Circuit affirmed the dismissal of petitioner's motion for a writ of error *coram nobis* based on the doctrine of laches where the petitioner waited over ten years after receiving copies of the grand jury transcripts, which formed the basis for his petition, to file his claim.

---

[1]See United States v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004) (deportation proceedings do not render an individual "in custody" within the meaning of 28 U.S.C. § 2255); Kandiel v. United States, 964 F.2d 794, 796 (8th Cir. 1992) (same); United States v. Jabero, No. 03-81060-2, 2012 WL 3109405, *3 (E.D. Mich. July 31, 2012)(Cleland, J.) (same). See also, Ogunwomoju v. United States, 512 F.3d 69, 75 (2d Cir. 2008) (joining the Ninth and Tenth Circuits in holding that subjecting defendant to deportation proceedings does not render defendant "in custody" within meaning of state habeas petition under 28 U.S.C. § 2254).

This case is markedly distinguishable from Kerman. Although the government first sought to remove Abou-Khodr in 2005, after the completion of his sentence, those proceedings were closed a few months later and he was released. It was not until December, 2009 that Detroit ICE agents detained him without a bond hearing and reinstated his removal proceedings. Abou-Khodr did not sit on his rights but on February 4, 2010, filed a 28 U.S.C. § 2241 habeas petition, claiming that his detention without a bond hearing violated his constitutional rights. The district court granted his habeas petition on March 11, 2010. Shortly thereafter, on July 30, 2010, Abou-Khodr filed his motion to vacate under § 2255, or in the alternative, a petition for a writ of error *coram nobis*, which is the matter pending here. The parties agreed to dismiss the motion without prejudice pending the appeal of the decisions of the immigration judge and the BIA. On August 8, 2013, the Sixth Circuit issued its opinion affirming the order of the immigration judge and ruling that Abou-Khodr was subject to removal to Lebanon. On that same day, Abou-Khodr filed in this court his renewed motion to vacate his sentence under § 2255, or alternatively, for relief by way of a petition for a writ of error *coram nobis*. Abou-Khodr argues that any delay was caused by the government's actions. Considering these circumstances, where Abou-Khodr filed his petition within months of the government's initiation of removal proceedings, and renewed his petition on the very date that the Court of Appeals for the Sixth Circuit rendered its decision, Abou-Khodr has acted with due diligence in pursuing his rights, and the doctrine of laches does not apply.

II.  WRIT OF CORAM NOBIS

The writ of error *coram nobis* is an extraordinary writ that allows a person who is no longer "in custody" and thus, is barred from bringing a § 2255 petition, to collaterally attack

his conviction. United States v. Morgan, 346 U.S. 502, 510-11 (1954). The writ is only available where "petitioner demonstrates a factual error that was unknown at the time of trial and that is "of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." Pilla v. United States, 668 F.3d 368, 372 (6th Cir. 2012) (quotations and citations omitted). "*Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental character - e.g., errors rendering the proceedings themselves invalid." United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 1996). The Sixth Circuit has recognized that *coram nobis* proceedings are substantially similar to § 2255 proceedings. Id. at 754. "Because of the similarities between *coram nobis* proceedings and § 2255 proceedings, the § 2255 procedure is often applied by analogy in *coram nobis* cases." Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996). In order to prevail on a claim for a *coram nobis* writ, the petitioner must demonstrate (1) an error of fact, (2) unknown at the time of trial, (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known. Johnson, 237 F.3d at 755. For the reasons set forth below, Abou-Khodr has satisfied this high hurdle to establish the elements necessary for *coram nobis* relief.

A petition for a writ of error *coram nobis* is an appropriate vehicle for a claim based on ineffective assistance of counsel. Chaidez, 133 S. Ct. at 1106, n. 1.; Pilla, 668 F.3d at 372. Here, Abou-Khodr alleges ineffective assistance of counsel in violation of his Sixth Amendment rights because his attorney allegedly promised him that he would not be removed if he pled guilty. To show ineffective assistance of counsel, Abou-Khodr must show that his attorney's performance was deficient and that his deficient performance

-8-

prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Strickland imposes a "high bar" that "must be applied with scrupulous care lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Premo v. Moore, 131 S. Ct. 733, 739-40 (2011).

In Hill v. Lockhart, 474 U.S. 52, 59 (1985), the Supreme Court stated that the two-part test to establish ineffective assistance of counsel set forth in Strickland "applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58. First, Abou-Khodr must show that his attorney's conduct fell below an objective standard of reasonableness. Id. at 58-59. Second, in order to show "prejudice," Abou-Khodr must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. The test is an objective one and Abou-Khodr must show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485. In deciding whether the petitioner would have insisted on going to trial, the court must consider a "prediction of the likely outcome at trial." Dando v. Yukins, 461 F.3d 791, 798 (6th Cir. 2006). In considering the likely outcome at trial, the court "need not determine to an absolute certainty that a jury would have acquitted . . . [r]ather, [the court] need only find a likelihood of a favorable outcome at trial." Id. at 802. While this court is well aware that the writ of error *coram nobis* is an extraordinary writ to be used sparingly in only the most exceptional cases, the unique facts presented in this case warrant this unusual remedy where Abou-Khodr's attorney affirmatively misled him that he would not be deported if he pleaded guilty, and those false promises were supported by the court's comments and the government's representations.

In United States v. Akinsade, 686 F.3d 248 (4th Cir. 2012), the Fourth Circuit addressed a similar case, in which the petitioner sought relief under the writ of error *coram nobis,* after immigration officials detained him based on his conviction and sentence nine years earlier for which he had completed his sentence. In that case, the defendant pled guilty to embezzlement based on his counsel's misadvice that he could be deported only if he had two felony convictions. Id. at 249. Although the district court advised him that one of the consequences of his plea was that he "could be deported," the Fourth Circuit found that this generalized admonition failed to cure his counsel's misstatement of the law and promise that he would not be deported. Id. at 254. The Fourth Circuit ruled that "the admonishment was far from a 'careful explanation' of the consequences of deportation," namely that deportation was mandatory. Id. The Court also found that defendant had satisfied the prejudice prong of Strickland where his decision to proceed to trial would have been reasonable in light of his anticipated defense that his involvement in the embezzlement scheme did not involve a third check; thus, limiting his fraud crime to less than $10,000 which would not have been a deportable offense. Id. at 256. Thus, the Fourth Circuit granted the writ of error *coram nobis* and vacated the conviction. Id.

The facts of this case are analogous to those presented in Akinsade. Here, defense counsel promised Abou-Khodr that if he pleaded guilty he would not be deported and the evidence against him was weak, such that a rational person would have elected to proceed to trial. In support of his motion for the writ of error *coram nobis*, Abou-Khodr has submitted the affidavit of his defense counsel, Plotkin, which states:

> 5. I recall conversations with Mr. Abou Khodr, prior and subsequent to his plea and sentencing, wherein I assured my client, based on my genuine belief –

which was premised upon numerous discussions with the government – he would remain in this country.

(Doc. 422, Ex. C at ¶ 5).  Plotkin also avers that he pressured his client into accepting the plea, based in part, on representations that doing so would allow him to remain in the country:

> 5. [t]hat because of my professional concerns emanating from the potential draconian period of incarceration he could have received had he been convicted after trial, I pressured Mr Abou-Khodr, including advising my client he would not be deported from this country, in order to induce my client to accept the government's plea offer.

(Doc. 459 at ¶ 5).  In support of his petition, Abou-Khodr also has submitted his own affidavit which states, in pertinent part:

> 5. That when he was indicted in this prosecution, he maintained his innocence of the charges contained in the indictment.  The fact he was advised the evidence against him was not strong, reinforced in him the belief he would vigorously contest the charges against him.
>
> 6. That when he proffer[ed] a plea of guilty, it was only after his attorney specifically and unequivocally guaranteed he . . . would remain in this country.  Even after the Court mentioned something about asylum, his attorney again specifically and unequivocally told him . . . not to worry or be concerned, that he (affiant) would definitely remain in this country with his family.
>
> 7. That because he . . . was of the firm and committed belief if he . . . was deported, it would be catastrophic for himself and his family, as well as the family business, he . . . would rather face the prospect of a long prison term rather than be deported from this country.  That it was only after his attorney specifically and unequivocally guaranteed him . . . he . . . would remain in this country did he . . . agree to proffer a plea of guilty.

(Doc. 422, Ex. C at ¶¶ 5-7).  At the August 22, 2013 status conference, the government represented that it did not dispute Abou-Khodr's affidavit testimony that his attorney promised him that he would not be deported.

-11-

As in <u>Akinsade</u>, <u>supra</u>, at the sentencing hearing, this court made a generalized comment that Abou-Khodr might face the possibility of deportation but that admonition was couched in language suggesting that the possibility was remote and that the government would do all it could to keep him in the country:

> THE COURT: There has been a long and sustained commitment by the defendant to do his best to assist the government as a part of the effort to atone for this violation. Accordingly the Court is going to honor the request made by Mr. Plotkin for a term of confinement of six months. I understand that will represent the optimal sentence for enhancing the defendant, Mr. Abou-Khodr's chances to remain in this country. I also know from the discussions we have had in chambers that there is no absolute assurance that Mr. Abou-Khodr will be able to remain in this country. Much of that decision resides with the Department of Homeland Security or whatever successor agency that may pertain, immigration or naturalization –
>
> MR. ALLEN: That's correct, your Honor.
>
> THE COURT: – that office. However, in part, the rationale for this sentence is fashioned to give Mr. Abou-Khodr the best chance he has to stay.

(Doc. 417 at 5-6). Abou-Khodr acted reasonably in dismissing the court's generalized statement, based on his affidavit stating, "[e]ven after the Court mentioned something about asylum, his attorney again specifically and unequivocally told him .. . not to worry or be concerned, that he . . . would definitely remain in this country with his family." (Doc. 422, Ex. D at ¶ 6). Also, in regards to any promises that may have been made to Abou-Khodr, the prosecutor stated as follows at the plea hearing:

> MR. ALLEN: Your Honor, excuse me. With respect to the agreement between the parties, I did have one additional factor to put on the record.
>
> It is not expressly a part of the Rule 11, but the defendant has advised the Government that he wishes to attempt to seek asylum under, excuse me, asylum might not be an announced program where a foreign national may be able to remain in the United States based on cooperation with the Government, even though he would otherwise be deported. The Government has agreed to, if appropriate, recommend that program for Mr. Abou-Khodr, however, we don't know yet if the parameters of the program or the type of cooperation he provides would qualify.

(Doc. 412 at 17). In sum, Abou-Khodr's good faith belief that if he pleaded guilty he would not be deported, was based not only on his attorney's misadvice, but the promises of his counsel were buttressed by the court's and the government's statements confirming that removal was unlikely, and that significant efforts were being made to keep him in the country based on his cooperation.

The government relies on Haddad v. United States, 486 Fed. Appx. 517 (6th Cir. 2012), in support of its position that Abou-Khodr's petition for a writ of *coram nobis* lacks merit. Haddad is easily distinguishable. In that case, defendant filed a petition for a writ of *coram nobis* to vacate his sentence for possession of LSD on the basis that his attorney provided ineffective assistance because he failed to advice him that pleading guilty would make him deportable. Id. at 518. Unlike this case, the petitioner did not allege that his attorney affirmatively promised him that pleading guilty would allow him to stay in the country, merely that he had failed to inform him that it was a possible consequence. Also, the Sixth Circuit found that the evidence against Haddad was overwhelming where he was stopped at the border and caught red-handed with drugs on his person, and he had no viable defense. Id. at 521. Under these circumstances, the Sixth Circuit ruled that a rational person would have pleaded guilty to the offense and thus, denied the petition for the writ of *coram nobis*. Id. at 522.

In this case, by contrast, it would have been objectively reasonable for Abou-Khodr to insist on going to trial. The evidence against him was weak and circumstantial, relying primarily on his fraternal connection to his brother who was also named as a defendant. According to the government's express agreement at the August 22, 2013 status conference, Abou-Khodr's alleged involvement in the conspiracy was minor and the

-13-

quantity of drugs involved was minimal. It is the court's recollection that Abou-Khodr's alleged involvement in the conspiracy was not based in any significant respect on any criminal conduct on his part, but on his familial relationships and actions taken at the direction of his brother and others who were the culpable ones. The only conduct attributable to Abou-Khodr in the presentence investigation report is that Abou-Khodr and his brother Kalil were alleged partners of drug supplier Housam Hamdar.

Moreover, the presentence investigation report does not set forth any evidence against Abou-Khodr or describe with any particularity his alleged participation in the conspiracy. Of the thirty-eight paragraphs outlining the offense conduct of the conspiracy in that report, only three paragraphs mention Abou-Khodr at all. Paragraph 14 states, "Khodr's brother, ALI ABOU-KHODR, was also a partner of Hamdar." This is the sum total of the offense conduct attributable to Abou-Khodr in the presentence investigation report. Paragraph 30 mentions Abou-Khodr by name only, but it does not describe his alleged involvement in the conspiracy; it merely states that a search warrant was executed based on three of his brother's alleged fraudulent use of credit cards. Finally, paragraph 38 mentions that Abou-Khodr has entered into a plea agreement with the government. Based on the presentence investigation report, it appears that the government's case against Abou-Khodr was not strong. At issue at trial would be whether he acted with guilty knowledge or simply because of his brother's request.

Abou-Khodr's ability to cooperate with the government against others of the 34 defendants named in the conspiracy, did not arise from his own criminal wrongdoing, but from his interconnections with his relatives, which in a Lebanese family are extremely close-knit. Abou-Khodr has submitted the affidavit of his defense attorney stating:

   3. That on the basis of the aforementioned review of the government's proofs, it was and is my concrete and professional opinion that the evidence against Mr. Abou-Khodr was weak, circumstantial and "at best" ambiguous concerning the culpability of [my] client.

   4. That it was and continues to be my professional conclusion my client was essentially "merely present" at various times, dates and places and appeared not to fully appreciate or be cognizant of what may have been transpiring around him.

(Doc. 459 at ¶¶3-4). Abou-Khodr would not have pleaded guilty but for his attorney's false guarantees that he would not be deported, and given the weak and circumstantial evidence against him, there was a likelihood of a favorable outcome should he have proceeded to trial. Accordingly, Abou-Khodr has satisfied both prongs of the Strickland test and has shown ineffective assistance of counsel in violation of his Sixth Amendment rights.

## CONCLUSION

Having shown ineffective assistance of counsel in violation of his Sixth Amendment rights, Abou-Khodr's petition for a writ of error *coram nobis* (Doc. 422 and 455) hereby is GRANTED and Abou-Khodr's conviction hereby is VACATED.

**IT IS SO ORDERED**.
Dated: August 30, 2013

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 30, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---